## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MATTHEW LAMBERT, Individually and for Others Similarly Situated,<br>　　　　　　　*Plaintiff,*<br><br>v.<br><br>PER SE GROUP, INC.<br>　　　　　　　*Defendant.* | **Case No.** ___23-cv-02501_____<br><br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1.      Matthew Lambert ("Lambert") brings this class action to recover unpaid overtime wages and damages from Per Se Group, Inc. ("PSG").

2.      Lambert worked for PSG as a Control Room Operator in Oxnard, California.

3.      Like the Putative Class Members (as defined below), Lambert regularly worked more than 8 hours in a day.

4.      In fact, PSG typically schedules Lambert and the Putative Class Members to work at least 12-hour shifts, but these employees often work more.

5.      PSG, however, does not pay them for all these daily overtime hours worked.

6.      Instead, PSG only pays Lambert and the Putative Class Members overtime wages at 1.5 times their regular rates of pay for the hours they work in excess of 10 hours in a day and 40 hours in a workweek (or PSG's "10/2 pay scheme").

7.      PSG *does* pay these employees double-time wages at 2 times their regular rates of pay for all hours they work in excess of 12 hours in a day.

8.      Nonetheless, by depriving Lambert and the Putative Class Members of overtime wages at 1.5 times their regular rates of pay for *all* hours they work between 8 and 12 hours in a

workday, PSG's uniform 10/2 pay scheme violates California wages laws. *See* CAL. LAB. CODE § 510; IWC Wage Orders 1-2001 through 17-2001.

9.    Further, in addition to failing to pay Lambert and the Putative Class Members overtime wages at the proper premium rate for all overtime hours worked, PSG also fails to provide these employees with compliant meal and rest periods.

10.    Instead, PSG requires these employees to remain on-duty and performing work throughout their shifts and fails to provide them with *any* meal or rest breaks.

11.    Despite depriving Lambert and the Putative Class Members of their required meal and rest periods, PSG does not pay these employees the required one hour of meal period premium pay (at their regular rates of pay) for each denied meal break in violation of California wage laws. *See* CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders 1-2001 through 17-2001.

## JURISDICTION & VENUE

12.    This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

13.    Specifically, upon information and belief:

    a.    the matter in controversy is believed to exceed $5,000,000;

    b.    at least one member of one of Lambert's proposed class and PSG are citizens of different states – indeed, Lambert and PSG are citizens of different states; and

    c.    Lambert's proposed class is believed to exceed 100 members.

14.    This Court has general personal jurisdiction over PSG because PSG is a domestic corporation that maintains its headquarters in Wheaton, Illinois.

15.    Venue is proper because PSG maintains its headquarters in Wheaton, Illinois, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## THE PARTIES

16.     Lambert worked for PSG as a Control Room Operator assigned to provide services to PSG's client, GenOn, in Oxnard, California from approximately September 2020 until September 2022.

17.     Throughout his employment, PSG classified Lambert as non-exempt and paid him on an hourly basis.

18.     Throughout his employment, PSG subjected Lambert to its 10/2 pay scheme that deprived him of overtime wages at 1.5 times his regular rate of pay for *all* hours he worked between 8 and 12 hours in a workday.

19.     Throughout his employment, PSG failed to provide him with compliant meal and rest periods and failed to pay him the required one hour of meal period premium pay (at his regular rate of pay) for each meal break PSG denied him.

20.     Lambert brings this action on behalf of himself and other similarly situated hourly, non-exempt PSG employees who were subject to PSG's illegal 10/2 pay scheme pursuant to California wage laws and FED. R. CIV. P. 23.

21.     The Putative Class of similarly situated employees is defined as:

> **All hourly, non-exempt PSG employees who were subject to PSG's 10/2 pay scheme while working in California at any time during the past 4 years ("Putative Class Members" or "Putative Class").**

22.     PSG uniformly deprives these employees of overtime wages at 1.5 times their regular rates of pay for *all* hours they work between 8 and 12 hours in a workday in violation of California wage laws.

23.     Likewise, PSG uniformly deprives these employees of compliant meal and rest periods but fails to pay them the required one hour of meal period premium pay (at their regular rates of pay) for each meal break PSG denies them in violation of California wage laws.

24.     PSG is an Illinois corporation that maintains its headquarters in Wheaton, Illinois.

25.     PSG may be served with process by serving its registered agent: **Bret R. Klemetson, 1001 Warrenville Road, Suite 500, Lisle, Illinois 60532**, or wherever he may be found.

THE FACTS

26.     PSG is a staffing company that bills itself as "a leading workforce solution to the Energy and Industrial markets … [with] recruitment expertise [that] seamlessly match[es] talented people in the industry with the right job opportunities."[1]

27.     PSG hires workers, including Lambert and the Putative Class Members, that PSG staffs to its energy and industrial industry clients across the country, including in California.

28.     PSG uniformly classifies these employees as non-exempt and pays them on an hourly basis.

29.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

30.     For example, Lambert worked for PSG as a Control Room Operator assigned to provide services to PSG's client, GenOn, in Oxnard, California from approximately September 2020 until September 2022.

31.     As a Control Room Operator, Lambert's primary responsibilities included monitoring and maintaining all power plant equipment to ensure the plant is running and functioning in accordance with GenOn's policies, procedures, specifications, and expectations, as well as well-established, industry-wide regulations.

32.     Throughout his employment, PSG classified Lambert as non-exempt and paid him on an hourly basis ($50/hour).

_____

[1] https://www.persegroup.com/ (last visited April 19, 2023).

33.     Throughout his employment, PSG subjected Lambert to its 10/2 pay scheme.

34.     Specifically, PSG only paid Lambert overtime wages at 1.5 times his regular rate of pay for the hours he worked in excess of 10 hours in a workday and failed to pay him overtime wages for his 8th and 9th hours of work.

35.     Indeed, PSG admits it subjects Lambert and the Putative Class Members to its illegal 10/2 pay scheme, only paying these non-exempt employees overtime wages at 1.5 times their regular rates only after 10 – not 8 – hours of work:

> I have provided below how the pay breakdown works on your rotation work week schedule:
> - $ ST per hour for hours worked up to 10 hours in a day while working a weekly rotation schedule
> - $ OT per hour for hours worked in over time in excess of the regular schedule of 10 hours in a day or beyond 40 hours in a week
> - $ DT per hour for hours worked in double time in excess of 12 hours in a day and any work beyond the scheduled work days
>
> Again, please feel free to call me with further questions.
>
> **Ariel Capristo**
> **Per Se Group**

36.     This is despite PSG (and its client, GenOn) routinely required Lambert to work 12+ hours a day for 4-5 days a week.

37.     Lambert's schedule is typical of the Putative Class Members.

38.     Lambert and the Putative Class Members performed their jobs under PSG's (and/or its clients') supervision, and using materials, equipment, and technology approved and supplied by PSG (and/or its clients).

39.     PSG requires Lambert and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

- 5 -

40.     At the end of each pay period, Lambert and the Putative Class Members received wages from PSG that were determined by common systems and methods that PSG selected and controlled.

41.     PSG requires its hourly, non-exempt employees, including Lambert and the Putative Class Members, to record their hours worked using PSG's timeclock system.

42.     Further, PSG uniformly subjects Lambert and the Putative Class Members to its illegal 10/2 pay scheme.

43.      Specifically, PSG only pays Lambert and the Putative Class Members overtime wages at 1.5 times their hourly rates after they work 10 hours in a workday.

44.     Thus, under PSG's uniform 10/2 pay scheme, Lambert and the Putative Class Members are denied overtime pay for their 8th and 9th hours of work in a day in violation of California wage laws.

45.     In addition to depriving Lambert and the Putative Class Members of overtime wages, PSG also fails to provide these employees with compliant meal and rest periods.

46.     Instead, PSG (and its clients) require Lambert and the Putative Class Members to work continuously throughout their shifts, and these employees are never fully relieved of all their duties for 30 consecutive minutes.

47.     But PSG does not pay Lambert and the Putative Class Members the required one hour of meal period premium pay (at their regular rates of pay) for each meal break PSG denies them in violation of California wage laws.

48.     PSG knows Lambert and the Putative Class Members routinely work more than 8 hours in a day, and often work more than 12 hours in a day, because PSG expects and requires these employees to do so.

49. But PSG does not pay Lambert and the Putative Class Members overtime wages for all overtime hours they work in a day in violation of California wage laws.

50. Lambert worked more than 8 hours in at least one workday during the four years before this Complaint was filed.

51. Likewise, each Putative Class Member worked more than 8 hours in at least one workday during the four years before this Complaint was filed.

52. Indeed, PSG typically schedules Lambert and the Putative Class Members to work 12-hour shifts for 4 days a workweek.

53. As a result, Lambert and the Putative Class Members routinely work in excess of 8 hours in a typical workday and 40 hours in a typical workweek.

54. When Lambert and the Putative Class Members worked more than 8 hours in a workday, PSG did not pay them 1.5 times their regular hourly rate for all overtime hours worked because PSG only paid these employees overtime wages for hours they worked in excess of 10 hours in a day.

55. PSG knew, or should have known, it was subject to California wages laws, including its daily overtime provisions.

56. PSG knew, or should have known, California wage laws require it to pay California employees, including Lambert and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 8 hours in a workday and double time wages at rates not less than 2 times these employees' regular rates of pay for all hours worked in excess of 12 hours in a workday.

57. PSG knew, or should have known, Lambert and the Putative Class Members worked more than 8 hours in a day because PSG expected and required them to do so.

58.     PSG knew, or should have known, California wage laws require it to provide California employees, including Lambert and the Putative Class Members, a 30-minute meal period when they work more than 5 hours in a day, as well as a second 30-minute meal period when they work more than 10 hours in a day.

59.     PSG knew, or should have known, California wage laws require it to pay California employees, including Lambert and the Putative Class Members, one hour of meal period premium pay (at their regular rates of pay) for each meal break PSG illegally denies them.

60.     PSG knew, or should have known, Lambert and the Putative Class Members work continuously throughout their shifts and are deprived of compliant *bona fide* meal breaks.

61.     PSG knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Lambert and the Putative Class Members of overtime compensation and meal period premium pay in violation of California wage laws.

62.     Nonetheless, PSG failed to pay Lambert and the Putative Class Members overtime compensation for all overtime hours worked.

63.     Likewise, PSG failed to pay Lambert and the Putative Class Members one hour of meal period premium pay (at their regular rates of pay) for each meal break PSG illegally denied them.

64.     PSG's failure to pay Lambert and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

65.     Likewise, PSG's failure to pay Lambert and the Putative Class Members meal period premium pay for their denied meal breaks was neither reasonable, nor was the decision not to pay these employees meal period premium pay for their denied meal breaks made in good faith.

## CLASS ACTION ALLEGATIONS

66.     Lambert brings his claims as a class action under FED. R. CIV. P. 23.

67.     The Putative Class Members were uniformly victimized by PSG's 10/2 pay scheme, which is in willful violation of California wage laws.

68.     Other Putative Class Members worked with Lambert and indicated they were paid in the same manner and were subject to PSG's same illegal pay policies.

69.     Based on his experiences with PSG, Lambert is aware PSG's illegal practices were imposed on the Putative Class Members.

70.     The Putative Class Members are similarly situated in all relevant respects.

71.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation and *bona fide* meal breaks.

72.     Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class treatment.

73.     Rather, the Putative Classes are held together by PSG's uniform 10/2 pay scheme that systematically deprived Lambert and the Putative Class Members of overtime wages for all overtime hours worked.

74.     The Putative Class Members are similarly denied overtime compensation at the proper premium rate for all overtime hours worked when they work more than 8 hours in a workday.

75.     The Putative Class Members are similarly denied compliant meal periods for which they are uniformly not paid mandatory meal period premium penalty pay.

76.     The back wages owed to Lambert and the Putative Class Members will be calculated using the same records and using the same formula.

77. Lambert's experiences are therefore typical of the experiences of the Putative Class Members.

78. Lambert has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class treatment.

79. Like each Putative Class Member, Lambert has an interest in obtaining the unpaid wages owed under California law.

80. A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

81. Absent a class action, many Putative Class Members will not obtain redress for their injuries, and PSG will reap the unjust benefits of violating California wage laws.

82. Further, even if some of the Putative Class Members could afford individual litigation against PSG, it would be unduly burdensome to the judicial system.

83. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

84. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

85. Among the common questions of law and fact are:

a. Whether PSG engaged in a policy and practice of failing to pay Lambert and the Putative Class Members overtime wages for all hours worked in excess of 8 hours in a workday in violation of California wage laws;

b. Whether PSG's uniform 10/2 pay scheme deprived Lambert and the Putative Class Members of overtime compensation for all overtime hours worked in violation of California wage laws;

c.      Whether PSG failed to provide Lambert and the Putative Class Members with compliant, *bona fide* meal and rest periods in violation of California wage laws;

d.      Whether PSG failed to pay Lambert and the Putative Class Members one hour of meal period premium penalty pay for each meal break it denied these employees in violation of California wage laws;

e.      Whether PSG's violations of California wages laws resulted from a continuing course of conduct;

f.      Whether PSG's decision not to pay Lambert and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

g.      Whether PSG's decision not to pay Lambert and the Putative Class Members meal period premium penalty pay for each denied meal break was made in good faith; and

h.      Whether PSG's violations of California wage laws were willful.

86.    Lambert and the Putative Class Members sustained damages arising out of PSG's illegal and uniform employment policies.

87.    Lambert knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

88.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to PSG's records, and there is no detraction from the common nucleus of liability facts.

89.    Therefore, the issue of damages does not preclude class treatment.

90.    PSG is liable under California wage laws for failing to pay Lambert and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they work more than 8 hours in a workday.

91.    PSG is liable under California wage laws for failing to pay Lambert and the Putative Class Members one hour of meal period premium penalty pay for each meal break it denies them.

92.    Consistent with PSG's illegal 10/2 pay scheme, Lambert and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 8 hours in a workday.

93.    As part of its regular business practices, PSG intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating California wage laws with respect to Lambert and the Putative Class Members.

94.    PSG's illegal policies deprived Lambert and the Putative Class Members of wages, including overtime compensation, which they are owed under California law.

## <u>COUNT I</u>
### FAILURE TO PAY OVERTIME WAGES

95.    Lambert realleges and incorporates all other paragraphs by reference.

96.    Lambert brings his overtime claim under the California Labor Code as a Rule 23 class action.

97.    At all relevant times, PSG was Lambert's and the Putative Class Members' "employer" within the meaning prescribed in the California Labor Code.

98.    At all relevant times, Lambert and the Putative Class Members were PSG's "employees" within the meaning prescribed in the California Labor Code.

99.    At all relevant times, PSG was subject to the California Labor Code and applicable IWC Wage Orders.

100. The California Labor Code requires that all employees, including Lambert and the Putative Class Members, receive 1.5 times their hourly rate as overtime premium compensation for hours worked over 8 hours in one day. *See* CAL. LAB. CODE § 510 (2017); IWC Wage Orders 1-2001 through 17-2001.

101. Despite regularly working over 8 hours a day as part of their normal and regular shifts, Lambert and the Putative Class Members did not receive any overtime compensation for all hours worked over 8 hours in one day.

102. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Lambert and the Putative Class Members to recover the unpaid balance of the full amount of overtime wages owed, an equal amount as liquidated damages, interest at the highest applicable rates, attorney's fees, and costs pursuant to CAL. LAB. CODE § 1194.

<u>COUNT II</u>
**FAILURE TO PAY FOR MISSED MEAL & REST PERIODS**

103. Lambert realleges and incorporates all other paragraphs by reference.

104. Lambert brings his meal and rest break claim as a Rule 23 class action.

105. At all relevant times, PSG was Lambert and the Putative Class Members' "employer" within the meaning prescribed in the California Labor Code.

106. At all relevant times, Lambert and the Putative Class Members were PSG's "employees" within the meaning prescribed in the California Labor Code.

107. At all relevant times, PSG was subject to the California Labor Code and applicable IWC Wage Orders.

108. Section 512 of the California Labor Code (and the applicable IWC Wage Orders) require employers, like PSG, to provide employees, including Lambert and the Putative Class

- 13 -

Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day. *See* CAL. LAB. CODE § 512(a); IWC Wage Orders 1-2001 through 17-2001.

109.     Similarly, IWC Wage Orders 1-2001 through 17-2001 require employers, like PSG, to provide all employees, including Lambert and the Putative Class Members, a 10-minute rest period for every 4 hours worked per day. *See* IWC Wage Orders 1-2001 through 17-2001.

110.     Section 226.7 of the California Labor Code further requires employers, like PSG, to pay employees, including Lambert and the Putative Class Members, one additional hour of pay at their regular rate of compensation for each day that meal and/or rest period(s) are not provided in compliance with Section 512. *See* CAL. LAB. CODE § 226.7(b).

111.     Despite regularly working at least 12-hour shifts, Lambert and the Putative Class Members, never received one uninterrupted 30-minute meal period for each day they worked 10 hours per day, nor did they receive two meal-period breaks for each day worked more than 12 hours a day.

112.     Likewise, despite regularly working at least 12-hour shifts, Lambert and the Putative Class Members never received any 10-minute rest breaks.

113.     As a pattern and practice, PSG did not provide Lambert and the Putative Class Members with *bona fide*, continuous, uninterrupted meal breaks, during which these employees were entirely relieved of all duties.

114.     As a pattern and practice, PSG did not provide Lambert and the Putative Class Members with compliant rest breaks.

115.     But PSG did not pay Lambert and the Putative Class Members the premium penalty pay for each day it denied these employees of compliant meal and/or rest breaks as required by California law.

116.     PSG's pattern, practice, and uniform administration of corporate policy as described herein is unlawful and entitles Lambert and the Putative Class Members to recovery pursuant to CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders 1-2001 through 17-2001.

117.     Accordingly, Lambert and the Putative Class Members are entitled to receive compensation, at their regular rate of pay, of one hour each day they were denied their lawfully required meal and rest periods. *See* CAL. LAB. CODE § 226.7(b); IWC Wage Orders 1-2001 through 17-2001.

<u>COUNT III</u>
**WAITING TIME PENALTIES**

118.     Lambert realleges and incorporates all other paragraphs by reference.

119.     Lambert brings his waiting time penalties claim as a Rule 23 class action.

120.     At all relevant times, PSG was Lambert's and the Putative Class Members' "employer" within the meaning prescribed in the California Labor Code.

121.     At all relevant times, Lambert and the Putative Class Members were PSG's "employees" within the meaning prescribed in the California Labor Code.

122.     At all relevant times, PSG was subject to the California Labor Code and applicable IWC Wage Orders.

123.     At all relevant times, PSG was required to pay Lambert and the Putative Class Members all wages owed in a timely fashion at the end of employment. *See* CAL. LAB. CODE §§ 201 to 204.

124.     As a result of PSG's alleged California Labor Code violations, PSG regularly failed to pay Lambert and the Putative Class Members their final wages pursuant to CAL. LAB. CODE §§ 201 to 204, and, therefore, PSG owes these employees waiting time penalties pursuant to CAL. LAB. CODE § 203.

125.     The conduct of PSG, in violation of Lambert and the Putative Class Members' rights, was willful and was undertaken by the agents, employees, and managers of PSG.

126.     PSG's willful failure to provide Lambert and the Putative Class Members the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

127.     Therefore, Lambert and any Putative Class Members who have separated from employment with PSG are entitled to compensation. *See* CAL. LAB. CODE § 203.

<u>**COUNT IV**</u>
**VIOLATION OF UNFAIR COMPETITION LAW**

128.     Lambert realleges and incorporates all other paragraphs by reference.

129.     Lambert brings his UCL claim as a Rule 23 class action.

130.     PSG has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required by California law; (2) meal- and rest-period breaks and penalty wages; and (3) waiting time penalties.

131.     As a result of PSG's failure to comply with California law, PSG has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

132.     The relevant acts by PSG occurred within the four years preceding the filing of this action.

133.     On information and belief, PSG has engaged in unlawful, deceptive, and unfair business practices, pursuant to CAL. BUS. & PROF. CODE § 17200, *et seq.*, including those set forth above, depriving Lambert and the Putative Class Members of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

134.    Accordingly, Lambert and the Putative Class Members are entitled to restitution for their unpaid overtime wages, permanent injunctive and declaratory relief prohibiting PSG from engaging in the violations and other misconduct described in this Complaint, and attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and other applicable law.

### JURY DEMAND

135.    Lambert demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Lambert, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating the lawsuit as class action pursuant to FED. R. CIV. P. 23;

b.    An Order appointing Lambert and his counsel to represent the interests of the Putative Class;

c.    An Order finding PSG liable to Lambert and the Putative Class Members for all unpaid compensation, penalties, and other damages owed under the California Labor Code and applicable IWC Wage Orders;

d.    Judgment awarding Lambert and the Putative Class Members all unpaid compensation and other damages available under the California Labor Code and applicable IWC Wage Orders;

e.    An Injunction precluding PSG from violating the UCL;

f.    An Order awarding attorney's fees, costs, and expenses;

g.    Pre- and post-judgment interest at the highest applicable rates; and

h.    Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Maureen A. Salas*
Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**